IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Alton D. Brown,                  :
           Petitioner           :
                                       :
           v.                         :   No. 730 C.D. 2016
                                       :   Submitted: August 18, 2017
Office of Inspector General,     :
           Respondent        :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge (P.)
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT             FILED: October 27, 2017

       Alton D. Brown, *pro se*, petitions for review of a final determination of the Office of Open Records (OOR) dismissing his appeal of the Office of Inspector General's decision to deny his request for information under the Right-to-Know Law.[1] Brown argues that OOR erred in finding that the Inspector General met its burden of proving that the requested information was either exempt from disclosure or did not exist. We affirm in part, vacate in part and remand the matter for further proceedings.

       On February 24, 2016, the Inspector General received a request from Brown, an inmate at SCI-Greene, seeking:

> 1. All letters/complaints to O.I.G. from Pa. D.O.C. prisoners reporting abuse, corruption, harassment, and/or any other inappropriate or unlawful acts by Pa. D.O.C. staff during 2010-2015, and requesting assistance, that were forwarded to the Pa. D.O.C. for disposition.

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§67.101-67.3104.

2. All documents reflecting OIG's disposition of the letter/complaints listed in paragraph No. 1, and OIG policy that governs the handling of prisoner complaints.

Certified Record (C.R.) Item No. 4, Attachment B, at 1 (emphasis in original). In a letter dated February 29, 2016, the Inspector General's Records Officer denied Brown's request for the stated reasons that (1) inmate complaints and documents relating to their disposition are records related to noncriminal investigations and as such are exempt from disclosure under Section 708(b)(17) of the Right-to-Know Law;[2] (2) inmate complaints and documents relating to their disposition are

---

[2] It states as follows:

> (b) Exceptions. – Except as provided in subsections (c) and (d), the following are exempt from access by a requester under this act:
>
> * * *
>
> > (17) A record of an agency relating to a noncriminal investigation, including:
> >
> > > (i) Complaints submitted to an agency.
> > > (ii) Investigative materials, notes, correspondence and reports.
> > > (iii) A record that includes the identity of a confidential source, including individuals subject to the act of December 12, 1986 (P.L. 1559, No. 169), known as the Whistleblower Law.
> > > (iv) A record that includes information made confidential by law.
> > > (v) Work papers underlying an audit.
> > > (vi) A record that, if disclosed, would do any of the following:
> > >
> > > > (A) Reveal the institution, progress or result of an agency investigation, except the imposition of a fine or civil penalty, the suspension, modification or revocation of a license, permit, registration, certification or similar authorization issued by an agency or

2

predecisional deliberations and exempt from disclosure under Section 708(b)(10)(i)(A) of the Right-to-Know Law;[3] and (3) Brown had requested this same information on two prior occasions and his repeated requests have placed an undue burden on the Inspector General.[4]   As to the request for records governing the

an executed settlement agreement unless the agreement is determined to be confidential by a court.

(B)     Deprive a person of the right to an impartial adjudication.

(C)     Constitute an unwarranted invasion of privacy.

(D)     Hinder an agency's ability to secure an administrative or civil sanction.

(E)     Endanger the life or physical safety of an individual.

65 P.S. §67.708(b)(17).

[3] It exempts:

(10)(i)  A record that reflects:

(A) The internal, predecisional deliberations of an agency, its members, employees or officials or predecisional deliberations between agency members, employees or officials and members, employees or officials of another agency, including predecisional deliberations relating to a budget recommendation, legislative proposal, legislative amendment, contemplated or proposed policy or course of action or any research, memos or other documents used in the predecisional deliberations.

65 P.S. §67.708(b)(10)(i)(A).

[4] Pursuant to Section 506(a)(1) of the Right-to-Know Law "[a]n agency may deny a requester access to a record if the requester has made repeated requests for that same record and the repeated requests have placed an unreasonable burden on the agency."  65 P.S. §67.506(a)(1).

The Inspector General also claimed that the complaints may be exempt because release could cause physical harm to the complainants; public safety could be at risk; disclosure could endanger the security of a building; the information may relate to a criminal investigation; the release of the information may be prohibited by statute; and the information may be protected by privilege.

Inspector General's policy for handling inmate complaints, the Records Officer stated that the records did not exist.

Brown appealed, and OOR invited the parties to supplement the record.[5] Relevant to this appeal, Brown submitted a copy of a 2015 complaint he filed with the Inspector General asserting that the Department of Corrections had improperly confiscated his personal property and a copy of the Inspector General's response to Brown. For its part, the Inspector General submitted the affidavit of Melissa K. Yerges, Director of the Bureau of Administrative Services, and the affidavit of David P. Todd, Deputy Inspector General.[6] Both affidavits asserted that the requested records were exempt because they were related to noncriminal investigations and that no records existed with respect to the Inspector General's policy on prisoner complaints.

OOR affirmed the Inspector General's denial of Brown's request. It held, however, that the Inspector General did not demonstrate that Brown's repeated requests have placed an undue burden on it, noting that Brown's single prior request for the same type of records was not disruptive. With respect to Brown's request for inmate complaints, the OOR held that this information was exempt from disclosure pursuant to Section 708(b)(17) of the Right-to-Know-Law, 65 P.S. §67.708(b)(17). Finally, OOR held that Yerges' affidavit established that the Inspector General did not have a record of a policy on prisoner complaints.

---

[5] OOR did not conduct a hearing.

[6] The record contains two affidavits by Todd. The first affidavit is dated February 29, 2016; the second affidavit is dated March 22, 2016.

4

Brown petitioned for this Court's review.[7] He asserts that the Inspector General did not establish that the inmate complaint information he requested was exempt under the noncriminal investigatory exception or that a policy on prisoner complaints did not exist. Furthermore, OOR did not address the evidence he presented, which explicitly contradicted the Inspector General's stated reasons for denying his record request.

Brown explains that he filed a complaint with the Inspector General on November 3, 2015, regarding confiscation of his property by prison staff at SCI-Greene. C.R. Item No. 1 at 5. In his 2015 complaint, Brown contended that while he was at the prison hospital, staff took property from his cell without justification and did not provide a receipt of the property taken. The Inspector General referred this matter to the Department of Corrections on November 9, 2015, in a letter from Grayling G. Williams, Inspector General, to John E. Wetzel, Secretary of Corrections:

> The Office of Inspector General … received a complaint from [Brown], an inmate at SCI-Greene, requesting assistance as he alleges staff at SCI-Greene sabotaged his legal activities after property was confiscated from his cell. For your convenience, a copy of the complaint is attached.
>
> After reviewing the complaint, the [Inspector General] determined *the complaint is not within the [Inspector General's] investigative jurisdiction* and is referring the complaint to you for whatever action you deem appropriate.

C.R. Item No. 1 at 7 (emphasis added). Brown argues that if the Inspector General has no jurisdiction to investigate inmate complaints regarding prison conditions and, indeed, no actual investigation has taken place, then inmate complaints sent to the

---

[7] Our review of a final determination of OOR is *de novo* and our scope of review is plenary. *Hunsicker v. Pennsylvania State Police*, 93 A.3d 911, 913 n.7 (Pa. Cmwlth. 2014).

Inspector General cannot be exempt under Section 708(b)(17) of the Right-to-Know-Law. 65 P.S. §67.708(b)(17).

The Inspector General responds that *Stein v. Plymouth Township*, 994 A.2d 1179 (Pa. Cmwlth. 2010), established that all complaints to an agency are exempt from disclosure under the Right-to-Know Law, regardless of whether or not they lead to an investigation. Thus, the inmate complaints requested by Brown are exempt. Further, Yerges' affidavit established that the Inspector General does not have a record of a policy on inmate complaints.

Section 301(a) of the Right-to-Know Law requires "Commonwealth agenc[ies]" to "provide public records in accordance with this act." 65 P.S. §67.301(a). A "Commonwealth agency" is defined in Section 102 of the Right-to-Know Law, in relevant part, as:

> (1) Any office, department, authority, board, multistate agency or commission of the executive branch, an independent agency and a State-affiliated entity. The term includes:
>
> (i) The Governor's Office.

65 P.S. §67.102. The Inspector General was "created within the Executive Office of the Governor…." 4 Pa. Code §1.291.[8] As such, the Inspector General is a Commonwealth agency obligated to disclose public records.

---

[8] Recently, Article V-a was added to Title 71, Chapter 2 of the The Administrative Code of 1929, delineating the powers, purpose and duties of the Inspector General as follows:

(a) Powers.--The State Inspector General shall have the power to:

> (1) Make an investigation and report relating to the administration of a program and operation of an executive agency that the State Inspector General determines is necessary. If the State Inspector General determines that a report should be issued, the State Inspector General may consult with the Office of General Counsel or the Attorney General before issuing the report to insure against

an adverse impact on a grand jury proceeding or prosecution being conducted by a law enforcement agency.

(2) Request information or assistance necessary for carrying out the duties and responsibilities under this article from the Federal Government, an executive agency or a local government agency or a unit of a Federal, State or local government agency.

(3) Require and obtain, by written notice from an officer and employee of an executive agency, information, documents, reports, answers, records, accounts, papers and other necessary data and documentary evidence.

(4) Have direct and prompt access to the heads of executive agencies if necessary for a purpose pertaining to the performance of functions and responsibilities under this article.

(5) Select, appoint and employ individuals necessary for carrying out the functions, powers and duties of the office. The employees shall be employed in accordance with current procedures of the Office of Administration and may be assigned by the State Inspector General to a designated executive agency.

(b) Purpose.**--**The purpose of the Office of State Inspector General is as follows:

(1) To deter, detect, prevent and eradicate fraud, waste, misconduct and abuse in a program, operation and contracting of an executive agency.

(2) To keep the head of an executive agency and the Governor fully informed about a problem and deficiency relating to the operation or administration of a program or contracts entered into by an executive agency.

(3) To provide leadership, coordination and control over satellite Inspector General Offices in a designated executive agency to ensure a coordinated and efficient administration of duties and use of staff. The existing Office of Inspector General in the Department of Transportation shall continue as a satellite Inspector General Office. Each satellite Inspector General Office in an executive agency shall report to and follow the direction of the State Inspector General.

(c) Duties.**--**The State Inspector General shall:

(1) Inspect, evaluate, investigate and review the activities, records and individuals with contracts, procurements, grants, agreements and other financial arrangements undertaken by an executive

7

agency for the purposes of identifying fraud, waste, misconduct or abuse.

(2) Conduct civil and administrative investigations of a program or operation of an executive agency.

(3) Make referrals to the Auditor General for the audit of the economy, efficiency and effectiveness of an executive agency's operations and functions and conduct reviews of the executive agency's compliance with the performance measurement system.

(4) Review the reliability and validity of the information provided by an executive agency's performance measures and standards.

(5) Provide information and evidence that relates to criminal acts discovered during the course of an investigation into an executive agency to appropriate law enforcement officials.

(6) Receive and investigate complaints from a source or upon the State Inspector General's own initiative concerning alleged abuses, frauds and service deficiencies, including deficiencies in the operation and maintenance of an executive agency facility.

(7) Engage in prevention activities, including, but not limited to, review of legislation, rules, regulations, policies, procedures and transactions, training and education.

(8) Refer matters for further civil, criminal and administrative action to appropriate administrative and prosecutorial agencies.

(9) Conduct joint investigations and projects with other oversight or law enforcement agencies that are consistent with the powers and duties contained under this article.

(10) Recommend remedial actions to be taken by an executive agency to overcome or correct operating or maintenance deficiencies and inefficiencies that were identified by the State Inspector General.

(11) Issue public reports.

(12) Maintain information regarding the cost of investigations and cooperate with appropriate administrative and prosecutorial agencies in recovering the costs from nongovernmental entities involved in willful misconduct.

(13) Perform other functions necessary to effectuate this article.

Act of April 9, 1929, P.L. 177, added by the Act of July 20, 2017, P.L. 328, 71 P.S. §213.

Here, the Inspector General asserts that the Right-to-Know Law has exempted from disclosure the records identified in paragraph 1 of Brown's request. Section 708(a)(1) states as follows:

> The burden of proving that a record of a Commonwealth agency or local agency is exempt from public access shall be on the Commonwealth agency or local agency receiving a request by a preponderance of the evidence.

65 P.S. §67.708(a)(1). A preponderance of the evidence is "such proof as leads the fact-finder ... to find that the existence of a contested fact is more probable than its nonexistence." *Pennsylvania State Troopers Association v. Scolforo*, 18 A.3d 435, 439 (Pa. Cmwlth. 2011) (quoting *Department of Transportation v. Agricultural Lands Condemnation Approval Board*, 5 A.3d 821, 827 (Pa. Cmwlth. 2010)).

In holding that inmate complaints are exempt from disclosure pursuant to Section 708(b)(17) of the Right-to-Know Law, both OOR and the Inspector General relied upon *Stein*, 994 A.2d 1179. In that case, a citizen complained to the township that a landowner was violating the zoning ordinance, prompting the township to initiate an enforcement action against this landowner. The defendant landowner requested the township provide him with all records relating to the commencement of the enforcement proceedings, including the complaint. The township granted the request in part. It furnished copies of the enforcement notices, but it refused to provide a copy of the complaint or the name of the complainant, stating that this information was exempt from disclosure under Section 708(b)(17)(i) of the Right-to-Know Law.

OOR held that because complaints are exempt from disclosure, all information in a complaint, such as the complainant's name, is exempt. The

9

landowner appealed to the trial court, which affirmed OOR. The landowner then appealed to this Court.

We agreed with the trial court that information in a citizen complaint is exempt from disclosure. We rejected the requesting landowner's argument that because "the agency's investigation was initiated upon the agency's internal evaluation of the information it received, not upon the name of the complainant," the information was disclosable. *Stein*, 994 A.2d at 1182 n.8. We concluded that "all complaints are exempt from disclosure *whether they caused the investigation to commence in whole or in part or not at all*." *Id.* (emphasis added).

However, we later clarified *Stein* to mean that there must be an investigation for the exemption to apply. We reasoned as follows:

> We agree with [r]equester, however, that complaints are not automatically exempt, as the OOR seemed to state citing [*Stein*, 994 A.2d at 1182 n.8]. In *Stein*, the [r]equester was arguing that the agency's investigation was *initiated* upon the agency's internal evaluation of the information it received and not on the name of the complainant which the requester sought from the complaint. In response, this Court stated that the argument was without merit because "all complaints are exempt from disclosure whether they *caused* the investigation to commence in whole or in part or not at all." *Id.* (emphasis added). However, to establish the applicability of any of the enumerated exemptions, under Section 708(b)(17), the agency must demonstrate that the records sought relate to a noncriminal investigation. *See Lackawanna County Government Study Commission v. Scranton Times*, (Pa. Cmwlth., No. 1938 C.D. 2014, filed November 20, 2015) 2015 WL 7357925. While this Court's unreported memorandum opinions may not be cited as binding precedent, they may be cited for persuasive value. 210 Pa. Code § 69.414.

*Black v. Pennsylvania State Police*, (Pa. Cmwlth., No. 676 C.D. 2016, filed November 23, 2016) (Slip Op. at 9 n. 16) (emphasis in original).

10

In short, *Stein* does not stand for the proposition that a complaint is exempt from disclosure under Section 708(b)(17)(i) of the Right-to-Know Law where that complaint does not lead to an investigation. To the contrary, there must be an investigation. Further, this Court explained "that, as used in Section 708(b)(17), the term 'investigation' means a systematic or searching inquiry, a detailed examination, or an official probe." *Department of Health v. Office of Open Records*, 4 A.3d 803, 810-11 (Pa. Cmwlth. 2010). Finally, the investigation must be "conducted as part of an agency's official duties." *Johnson v. Pennsylvania Convention Center Authority*, 49 A.3d 920, 925 (Pa. Cmwlth. 2012) (quoting *Department of Health*, 4 A.3d at 814) (emphasis omitted).

Here, OOR did not address whether an investigation was actually conducted by the Inspector General. It did not address the evidence presented by Brown that the Inspector General had acknowledged in writing that a complaint about prison staff was not within the Inspector General's "investigative jurisdiction…." C.R. Item No. 1 at 7. Where the Inspector General lacks authority to do a noncriminal investigation, the exemption in Section 708(b)(17)(i) of the Right-to-Know Law cannot apply. *Johnson*, 49 A.3d at 925.

OOR addressed neither Brown's argument nor his evidence. It has made no findings about whether the Inspector General actually investigates inmate complaints. Accordingly, we reverse OOR's final determination that the Inspector General has met its burden of proof with respect to Brown's request for other inmate complaints.

With respect to the request in paragraph 2, Brown does not challenge OOR's determination that the Inspector General does not have a record setting forth its policy with respect to inmate complaints. However, paragraph 2 of Brown's

11

request also seeks information on the Inspector General's disposition of the inmate complaints requested in paragraph 1 of the request. OOR found that the Inspector General met its burden of proving that all of the records requested in paragraph 2 of the request did not exist, based on Yerges' affidavit. Her affidavit states as follows:

> I reviewed the Request and determined [the Inspector General] does not have in its possession any "documents reflecting [the Inspector General's] disposition of the letter/complaints listed in paragraph No1, and [the Inspector General] policy that governs the handling of <u>prisoner complaints</u>" or any other records responsive to the second paragraph of the request[].

Yerges Affidavit (3/23/16), C.R. Item No. 4, Attachment D, ¶7 at 2 (emphasis in original). Todd's Affidavit states otherwise:

> [The Inspector General] has determined that there are no responsive records to the request in paragraph 2 for "[Inspector General] policy that governs the handling of prisoner complaints." *[The Inspector General] has also determined that the only responsive records to paragraph 1 and the remainder of paragraph 2 would be ones that would, if disclosed, reveal information regarding the institution, progress or result of an agency investigation* or otherwise consist only of official [Inspector General] investigative materials.

Todd Affidavit (2/29/16), C.R. Item No. 1 at 15, ¶30 at 5 (emphasis added).

There is a discrepancy between these two affidavits. Yerges states that records showing the disposition of inmate complaints do not exist, and Todd asserts that these records consist of "official" investigative materials, suggesting that they do exist. There would be no reason to raise an exemption argument for non-existent records. In any event, the record includes two letters from the Inspector General disposing of one of Brown's prior complaints, *i.e.*, the letter advising Brown that the Inspector General is referring his complaint to the Department of Corrections and the letter from the Inspector General to the Department of Corrections. C.R. Item

12

No. 1 at 6-7. These documents cannot be reconciled with the statements in Yerges' affidavit. We reverse the determination of OOR that the Inspector General proved that it has no records relating to the disposition of the requested inmate complaints.

For the above-stated reasons, we affirm the OOR's final determination holding that the Inspector General does not have a record of a policy for handling inmate complaints. In all other respects, we reverse the final determination and remand for further consideration of the evidence of record.[9]

_____
MARY HANNAH LEAVITT, President Judge

Judge Cosgrove did not participate in the decision in this case.

---

[9] We decline to exercise our authority to independently review the record because "allowing OOR to make an initial decision [on the record] allows for a more developed analysis of the important issues." *Bagwell v. Pennsylvania Department of Education*, 76 A.3d 81, 91 (Pa. Cmwlth. 2013). Additionally, should OOR find that the Inspector General did not meet its burden of proof regarding the noncriminal investigation exemption or regarding its claim that certain documents do not exist, it must then consider the other exemptions claimed exceptions raised by the Inspector General below.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Alton D. Brown,                 :
           Petitioner       :
                        :
      v.               :  No. 730 C.D. 2016
                        :
Office of Inspector General,  :
           Respondent  :

## O R D E R

AND NOW, this 27th day of October, 2017, the final determination of the Office of Open Records, dated April 13, 2016, is AFFIRMED in part, and VACATED in part and this matter is REMANDED for further proceedings consistent with the foregoing opinion.

Jurisdiction relinquished.

_____
MARY HANNAH LEAVITT, President Judge